PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii

PAMELA J. BYRNE      # 1979
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:      fpdhi@hotmail.com

Attorney for Defendant
JAMS LESLIE CORN, JR.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 05-00366 HG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMS LESLIE CORN, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF LAW

## I.    DISCUSSION

_____The instant case involves the alleged involvement of a Honolulu

police officer in a serious methamphetamine drug crime.  The case has received

considerable pre-trial publicity, commencing with a press conference called by the

United States Attorney to announce the indictment, followed by negative statements made about the defendant by the Chief of Police at his own press conference -- statements which implied the Chief knew Corn was guilty.

Virtually every court hearing in this case has been covered by the print media as well as the television and radio stations.  At the time of indictment, the case was the topic of several talk radio hosts, with the hosts and callers spouting negative, and uninformed, opinions about the case.  Moreover, there is a more recent case concerning the collusion of police officers and an F.B.I. secretary which has also been heavily covered by the media.  Potential jurors may well confuse the two cases.

Corn seeks to have his counsel conduct limited voir dire of the jurors once the initial screening has been done, and after the jurors are seated in the jury box.  The voir dire would be limited to questions assuring impartiality and lack of bias towards Corn.  In addition, Corn requests that voir dire concerning pre-trial publicity be conducted separately and out of the presence of other jurors, and that his counsel be allowed specific follow-up questions on a limited basis after the court has questioned the juror about his or her exposure to publicity.

Federal Rule of Criminal Procedure 24(a) affords the Court broad discretion as to whether prospective jurors should be questioned collectively or individually and out of the presence of other jurors.  This broad discretion is

however limited by the requirements of due process and the trial court must "be capable of giving 'reasonable assurances that prejudice would be discovered if present.'"  United States v. Hawkins, 658 F.2d 279 (5th Cir. 1981).  See also Silverthorne v. United States, 400 F.2d 627 (9th Cir. 1968).

In Silverthorne, supra, the Ninth Circuit reversed Silverthorne's bank fraud conviction where, despite considerable pretrial publicity, the trial court conducted a voir dire insufficient to determine potential juror bias.  In particular, the Ninth Circuit held, *inter alia*, that where every juror had heard something about the defendant's case, the trial court made insufficient effort to ascertain what information jurors had accumulated and consequently had no way of objectively assessing the impact of publicity on jurors' impartiality, and moreover, that the trial court's voir dire examination, which merely went through the *form* of obtaining jurors' assurances, was prejudicial.

In Silverthorne, the Ninth Circuit found the trial court's voir dire inadequate on two grounds:  1)  the questions propounded by the court to the prospective jurors were calculated to evoke responses which were subjective in nature -- the jurors were called upon to assess their own impartiality for the court's benefit, and 2) the entire voir dire examination was too general to adequately probe the prejudice issue.  In this regard, the Ninth Circuit cited with approval United States ex rel. Bloeth v. Denno, 313 F.2d 364, 372 (2d Cir 1963) which held

that in the absence of an examination designed to elicit answers which provide an objective basis for the court's evaluation, "merely going through the form of obtaining jurors' assurances of impartiality is insufficient (to test that impartiality)."

The Ninth Circuit found the trial court in <u>Silverstone</u> had made "no effort to ascertain what information the jurors had accumulated and, consequently, had no way of objectively assessing the impact caused by this pretrial knowledge on the juror's impartiality." <u>Silverthorne</u>, 400 F.2d at 638. Moreover, the fact that certain jurors offered a "no response" response to the court's question was insufficient to conclude the juror was not prejudiced by pretrial publicity. <u>Id</u>. at 640. The Ninth Circuit also found that because the trial court's voir dire was ineffective to test the jurors' competency, its overruling the appellant's request to personally (through counsel) interrogate those jurors was prejudicial error. <u>Id</u>. at 640.

> The defendant in a criminal case has the right to probe for hidden prejudices of jurors. The impartiality necessary on behalf of a fair juror is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and is not chained to any ancient or artificial formula.

<u>Id</u>.

As noted in Justice Marshall's dissent (joined by Justices Stevens and

Blackmun) in <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 442-443 (1991):

> [E]ven when pretrial publicity is not so extreme as to
> make a juror's exposure to it per se disqualifying,
> content questioning is still essential to give legal depth to
> the trial court's finding of impartiality. One of the
> reasons that a juror may be unaware of his own bias is
> that the issue of impartiality is a mixed question of law
> and fact, the resolution of which necessarily draws upon
> the trial court's legal expertise. Where, as in this case,
> the trial court asks a prospective juror merely whether he
> can be impartial, the court may well get an answer that is
> the product of the juror's own confusion as to what
> impartiality is.

Moreover, it is well settled that trial counsel know the facts and

circumstances surrounding a case better than the trial court. "Knowing what

specific questions to ask is difficult for the judge, who lacks the same grasp

attorneys have of the complexities and nuances of a particular case." <u>United

States v. Nell</u>, 526 F.2d 1223, 1229 (5th Cir. 1976).

> This court has previously stressed that voir dire
> examination not conducted by counsel has little meaning.
> For reasons of economies of time and implicit
> identification of the jury as a neutral body, the judge may
> conduct voir dire. If he does, however, he should at least
> give all deliberate deference to counsels' advantage of
> prior research and investigation. Their preparation of the
> case gives them more intimate knowledge of the
> strengths and weaknesses of their clients' cases, and
> consequently accords them ability to prepare voir dire
> questions better designed to insure a fair and impartial
> jury.

United States v. Corey, 625 F.2d 704, 707-708 (5th Cir. 1980). Thus, although the issue of whether attorney-conducted voir dire should be available in a given case remains at least arguable, there is growing recognition for the proposition that attorney-conducted voir dire should be allowed. In fact, some courts have found that a new trial is warranted in the absence of such questioning. See People v. Tyburski, 494 N.W. 2d 20, 27 (Mich.App.1992) (finding that, in the absence of attorney voir dire, the judge's questions should be scrutinized to determine whether such questions were "probing enough to allow meaningful decisions to be made regarding challenges for cause and peremptory challenges").

Corn also asks that voir dire concerning pretrial publicity and other sensitive and/or prejudicial issues that may arise during trial be conducted in privacy. Questioning prospective jurors in each other's presence carries the significant risk that one juror's inflammatory and prejudicial response will unnecessarily taint the other members of that panel. Recognizing this, the courts have expressly held that "[t]he safer practice in situations involving possible prejudice from newspaper articles or other sources is to interrogate each juror separately and out of the presence of the other jurors." United States v. Schrimsher, 493 F.2d 848, 854 (5th Cir. 1974).

II.    **CONCLUSION**

"The theory of our system is that the conclusions to be reached in a [jury trial] will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." <u>Silverthorne</u>, 400 F.2d at 636, (citing <u>Patterson v. State of Colorado</u>, 205 U.S. 454,462 (1907)). Believing that conclusions based only on the evidence and arguments satisfies due process, "our system of law has always endeavored to prevent even the probability of unfairness." <u>In re Murchison</u>, 349 U.S. 133 (1955).   A fair jury and an impartial one *is* the heart of the American concept of criminal justice.  No matter how much process is due and received, it is all meaningless if the jury is biased before the evidence has even been presented.

Based upon the preceding facts and law, Corn respectfully requests the jury be questioned separately from other jurors regarding both pretrial publicity and bias the members may have towards police officers accused of committing crimes, and that counsel may be allowed personally to question the panel on a limited basis to assure a fair and "appropriately indifferent" jury.

DATED:   Honolulu, Hawaii, July 12, 2006.

/s/ Pamela J. Byrne
PAMELA J. BYRNE
Attorney for Defendant
JAMES LESLIE CORN, JR.