1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF HAWAII

 3
    UNITED STATES OF AMERICA,    )  CR 05-00366 HG
 4                               )
               Plaintiff,        )  Honolulu, Hawaii
 5                               )  November 8, 2006
          vs.                    )  10:30 a.m.
 6                               )
    JAMES LESLIE CORN, JR.,      )  Sentencing to Counts 2 and 3
 7                               )  of the Superseding
               Defendant.        )  Indictment; Government's
 8   _____ )  Motion for Upward Departure
                                    from the Advisory Guideline
 9                                  Range Pursuant to 5K2.0, or,
                                    in the Alternative, an
10                                  Upward Variance Based on
                                    Factors Set Forth in 18 USC
11                                  3553(a)

12               TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE HELEN GILLMOR
13             UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15    For the Plaintiff:       THOMAS J. BRADY, ESQ.
                               Office of the United States Attorney
16                             PJKK Federal Building
                               300 Ala Moana Blvd., Suite 6100
17                             Honolulu, Hawaii  96850

18    For the Defendant:       PAMELA J. BYRNE, ESQ.
                               Office of the Federal Public
19                             Defender
                               PJKK Federal Building
20                             300 Ala Moana Blvd., Room 7-104
                               Honolulu, Hawaii  96850
21
      Official Court           Sharon Ross, CSR, RPR, CRR, RMR
22    Reporter:                United States District Court
                               300 Ala Moana Blvd., Room C-283
23                             Honolulu, Hawaii  96850
                               (808) 535-9200
24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).
```



EXHIBIT _C_

2

1    WEDNESDAY, NOVEMBER 8, 2006                      10:30 A.M.

2             COURTROOM MANAGER:  Criminal 05-00366 HG, United

3    States of America versus James Leslie Corn, Jr.

4             This case is called for sentencing to Counts 2 and 3

10:49AM  5    of the superseding indictment and hearing on government's

6    motion for upward departure.

7             Appearances, please, counsel, for the record.

8             MR. BRADY:  Good morning, Assistant United States

9    Attorney Tom Brady on behalf of the United States, along with

10:50AM 10    Task Force Officer Joyce Alapa.

11             THE COURT:  Good morning.

12             MS. BYRNE:  Good morning.  Your Honor, may the record

13    note the presence of Mr. Corn, along with counsel Pamela Byrne.

14             THE COURT:  Good morning.  Now, Mr. Corn, have you

10:50AM 15    reviewed the presentence report with Ms. Byrne?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Thank you.  You may be seated.  Now --

18             MS. BYRNE:  Your Honor, the microphones seem blurry --

19    yours does.  Hard to hear you.

10:50AM 20             THE COURT:  Is it too low or too high?

21             MS. BYRNE:  Well, it's just blurry.  It sounds like

22    there's -- well, I guess we'll just deal with it.

23             THE COURT:  Well, if you can't understand what I'm

24    saying at any point -- maybe it's a little high.  Maybe that's

10:50AM 25    it.  No, no that?  Well, we're getting new audio systems within

1    six months or so, or at least time told.

2            Okay.  If you don't understand what I'm saying at any

3    point, please let me know.

4            Now, Ms. Byrne, you have raised objections to the

10:51AM 5    presentence report; and I know some have been satisfied and

6    some have not.  So, if you would now orally state the ones that

7    remain so that we may examine them.

8            MS. BYRNE:  Yes.  Your Honor, I am satisfied with the

9    probation officer's response to my objections to Paragraph 11

10:51AM 10    and 48.

11            I wanted to clarify my objection to Paragraph 21.  And

12    as -- I actually wrote -- I forgot to write down the paragraphs

13    that concern the inmate -- unknown or unnamed inmates.

14            THE COURT:  25, 26 and 27.

10:51AM 15            MS. BYRNE:  Thank you, Your Honor.  And as to -- as to

16    those three, if the court does -- is not inclined to give them

17    much or any weight, then I will just rest on my objection.  And

18    we don't need to argue it any further.

19            THE COURT:  But you still maintain the objection?

10:52AM 20            MS. BYRNE:  I do maintain it, but I don't need to

21    argue it if the court prefers --

22            THE COURT:  Sure, sure.  I think it's been adequately

23    briefed.  What about 21?

24            MS. BYRNE:  21.  Oh, the point I was making on

10:52AM 25    Paragraph 21, I think I must have made poorly.  I was not

4

1    objecting to the -- there was a phrase -- a sentence:  "The

2    defendant agreed to assist the UC distribute a large amount of

3    meth to another person."

4          When I wrote that in my response, I left out the

10:52AM  5    phrase "assist the UC"; but it wasn't intentional.  I wasn't

6    talking about that.  I was talking about his agreement to

7    distribute meth, and I disagreed that he agreed to distribute

8    meth.

9          As I indicated in everything I wrote, this was a

10:52AM  10   sting, and previously it had all been cash.  In fact,

11   Paragraph 20 of the presentence report -- Paragraph 20 of the

12   presentence report does discuss, on 6-29-05, a recorded

13   conversation in which the UC then informed the defendant that

14   the UC had a transaction to pick up some money and the UC and

10:53AM  15   the defendant agreed the defendant would watch the UC while the

16   UC collected the money and so on.

17          And throughout the recordings that I listened to and

18   saw, the deal was this UC was a -- supposed to be a fight

19   promoter that had a lot of cash.  And Mr. Corn found him hotel

10:53AM  20   rooms, and I'm not sure if they went -- he took him to clubs or

21   not.  And then he would just stand by as this briefcase full of

22   cash was around.  Not that I'm saying in any way that's

23   admirable; but I am saying that up until the day of the 25th,

24   it had never before been dope.  So, that was my only point.

10:54AM  25          And I concur, as well, that my client made a statement

1    when he was arrested.  And in his statement he said that he

2    thought it could have been methamphetamine.  So, that is -- I

3    don't really think the court needs to rule because I'm willing

4    to let my written arguments be sufficient.

10:54AM  5            THE COURT:  Well, when one objects, the court is

6    supposed to --

7            MS. BYRNE:  All right.  Well, you can rule.

8            THE COURT:  -- rule, Ms. -- well, thanks.

9            MS. BYRNE:  But what I meant --

10:54AM 10            THE COURT:  Ms. Byrne, you can't have it both ways.

11            MS. BYRNE:  Okay.

12            THE COURT:  You can't raise the objection, put it

13    forward and then say I'm not going to rule on it unless what

14    you are saying is that he did make the statement that he knew

10:54AM 15    it could be methamphetamine.

16            MS. BYRNE:  I agree.  He did make that statement.

17            THE COURT:  So --

18            MS. BYRNE:  But that was after the offense.  What he

19    said was -- well, again, I don't have it right in front of my

10:55AM 20    eyes; but it was after the offense when they were questioning

21    him.  He said, yeah, I thought it could have been; but

22    beforehand -- I have the tape from the day before in which -- I

23    indicated what he did say.  So --

24            THE COURT:  Is your point that he did not necessarily

10:55AM 25    know before; but while it was going on, he later said he knew

1  it could be methamphetamine?

2           MS. BYRNE:  It may have been, yes, that is my point.

3           THE COURT:  So, that being the case, you're just

4  quibbling about whether he knew in advance whether it was

10:55AM  5  methamphetamine?

6           MS. BYRNE:  Well, because the language is he agreed to

7  do methamphetamine that day; and that's not -- that's not

8  accurate.

9           And as -- my point is in the past all those deals had

10:55AM  10  been for cash or allegedly -- I mean, they were all made up

11  but, I mean, allegedly for cash.  That's the point.

12           And, again, as to the inmate people, I -- I continue

13  with that objection.  I guess I would withdraw the objection if

14  the court indicated that it felt that those inmate meetings

10:56AM  15  or -- had little effect on the court's reasoning.

16           THE COURT:  Okay.  Thank you.  Let's hear from

17  Mr. Brady.

18           MR. BRADY:  Your Honor, we have reviewed the

19  presentence report as well as the addendum which outlines the

10:56AM  20  responses by U.S. Probation.  We concur with those responses.

21           As to Paragraphs 21 and -- I believe it was 48 was the

22  only remaining objections?

23           MS. BYRNE:  Correct.

24           MR. BRADY:  We would concur with the responses that

10:56AM  25  are outlined in the addendum, Judge.

7

1            And we would also note we dispute that the discussion

2    that the defendant was engaged with with the undercover was

3    something to do with fight promotions.  I don't believe that

4    was the case.

10:56AM  5            And I would also submit to the court that throughout

6    the investigation the defendant was engaged in communications

7    with the undercover officer discussing drugs, cocaine, the

8    amounts, what he can get for street value here in Hawaii.  So,

9    there was ample opportunity and discussion to know what they

10:57AM 10    were dealing with; and that was drugs.  So, we would dispute

11    that it had anything to do with anything other than drugs.

12            THE COURT:  Is there anything in any of the recordings

13    that talks about fight promoting?

14            MR. BRADY:  Not to my knowledge, no.

10:57AM 15            MS. BYRNE:  Yes, Your Honor.  I don't -- there are a

16    lot of recordings.  And it was his uncle that told him that

17    this was a fight promoter and that this guy traveled with a lot

18    of cash and that sometimes he needed someone to watch him.

19            It's in -- you know, it is in all of these -- there's

10:57AM 20    like this many -- and I must say that Mr. Brady was not the

21    initial Assistant United States Attorney, but that was the --

22    the story.

23            THE COURT:  How does his uncle figure in this?

24            MS. BYRNE:  Pardon?

10:58AM 25            THE COURT:  How does his uncle figure in this sting?

8

1          MS. BYRNE:  Because I -- if you -- it's in my

2     sentencing memorandum, but the uncle was the -- evidently the

3     initial target of the sting.  And then he never got stung; but

4     when they were listening to the uncle, they learned about James

10:58AM 5     Corn and the sting shifted over to Mr. Corn.  That's how the

6     uncle got involved.

7          THE COURT:  Bad uncle?

8          MS. BYRNE:  Yeah.

9          THE COURT:  Okay.

10:58AM 10         MR. BRADY:  Your Honor, again, we submit that there's

11     nothing in the tapes that would indicate this was a fight

12     promoter that was hooking up with Mr. Corn.

13          We would also submit that obviously any information

14     from Mr. Corn's uncle to Mr. Corn in a telephone conversation,

10:58AM 15     obviously the government was involved in that.  We didn't

16     record it.  So, whatever allegedly his uncle told Mr. Corn,

17     we're not privy to.

18          THE COURT:  Okay.  Thank you.  Okay.  What we have

19     with respect to the remaining objections, as to 11 and 48, you

10:59AM 20     are no longer objecting and you accept what the Probation

21     Officer has provided in their addendum to the presentence

22     report?

23          MS. BYRNE:  Yes, ma'am.

24          THE COURT:  Okay.  As to 21, I think that this is a

10:59AM 25     question of whether or not he knew at the time he had the bag

9

1    it was methamphetamine or just suspected that it was

2    methamphetamine.  It is not necessary for me to find that he

3    knew for a fact that it was methamphetamine because that isn't

4    the charge that he is being sentenced for.

10:59AM    5         The fact that he was willing to hold onto a bag that

6    he thought might have methamphetamine while he's in -- over a

7    long period of time talking about drugs, how to get drugs, the

8    price of drugs, his use of drugs, all of those things indicate

9    that he was not -- he took no action if he thought it was

11:00AM   10    methamphetamine.  He didn't do -- he didn't throw the bag away

11    and say, no, I certainly wouldn't have anything to do with

12    that.  I mean, let's be realistic here.  It didn't -- it was

13    not of import to him whether or not it was methamphetamine.

14         However, as I said, it isn't what I'm sentencing him

11:00AM   15    for.  So, yes, he acknowledges that it could have been

16    methamphetamine at that point.  So, I think that is of

17    sufficient clarity with respect to how the court rules.

18         Now, as to Paragraphs 25, 26 and 27, I think it's

19    difficult to figure out the import of what he was saying,

11:00AM   20    the -- in terms of talking to the inmates in the sense that

21    there are a number of recordings in which he is comfortable

22    dealing in guns, selling guns to people he thinks are dealing

23    drugs.  And when he, as a law enforcement person, goes to

24    prison, which is it?  Is he continuing to do the things he did

11:01AM   25    before or is he just hanging out and trying to look tough?

10

1          I don't know.  I don't know about the veracity of

2     whether these things were said or whether they were said and he

3     did not mean them at the time.  I think it -- it points out the

4     difficulty of his situation and the inappropriateness of his

11:01AM 5     conduct prior to being sent to prison, but it isn't something

6     that I am going to take as an indication -- I'm not going to

7     treat it -- if it did happen, if he actually said these things

8     to the people in prison, I have no ability to know whether they

9     were true or not.  And if he did say them, he could have had a

11:01AM 10    number of motives for saying them.

11          So, I'm not striking them; but I certainly am not

12     going to act on them.  I think there's enough other information

13     here to know what was going on prior to the time he went to

14     prison.  And I'm not going to rule based on those.

11:02AM 15         I think that is -- you're okay with 49 and 50?

16          MS. BYRNE:  Yes, Your Honor.

17          THE COURT:  Okay.  You're not objecting to that, nor

18     to 57?

19          MS. BYRNE:  Oh.

11:02AM 20        THE COURT:  Do you have the addendum before you?

21          MS. BYRNE:  Yes, I have no objection to 57.  Thank

22     you, Your Honor.

23          THE COURT:  Okay.  Now, as to 48, are you continuing

24     to object to 48 or not?

11:02AM 25        MS. BYRNE:  No, I am happy with my -- the

1    incorporation of my explanation, Your Honor.

2            THE COURT:  Okay.  Very well.  Thank you.

3            The court -- having ruled on all of the objections,

4    the court at this time adopts the factual statements contained

11:03AM  5    in the presentence investigation report to which there are no

6    objections and the addendum.  And the court has ruled with

7    respect to the controverted statements and has resolved them.

8            At this time the court is placing the presentence

9    report in the record under seal.  If an appeal is taken,

11:03AM 10    counsel on appeal may be permitted access to the sealed report

11    with the exception of the recommendation section.

12            There is a plea agreement in this matter, and the

13    court is satisfied that the agreement adequately reflects the

14    seriousness of the actual offense behavior and that accepting

11:03AM 15    the plea agreement will not undermine the statutory purposes of

16    sentencing and it is accepted.

17            Now, the government has filed a motion for an upward

18    departure in this matter.  And the court has -- there are no

19    objections to the Probation Officer's conclusions as to the

11:03AM 20    applicable advisory guidelines.  And the court is considering

21    the advisory guidelines and finds that the advisory guidelines

22    are of assistance to the court in that they provide

23    continuity -- a method for continuity of sentencing across the

24    country.  The Sentencing Commission provides information,

11:04AM 25    policy statements and statistical compilations that are of

12

1    assistance to the court in sentencing.  And they also raise

2    issues with respect to a particular defendant and the sentences

3    for -- and sentencing the defendant for the particular crime

4    for which he is being sentenced.  So, for all of those reasons,

11:04AM  5    I do consult the advisory guidelines.

6            The total offense level is 12.  The criminal history

7    category is I.  And the advisory guidelines for Counts 2 and 3

8    are 10 to 16 months.  The defendant is not eligible for

9    probation.  Supervised release, two to three years; fine range

11:05AM  10    of 30,000 -- excuse me -- 3,000 to 30,000.  Restitution is not

11    applicable, and there's a special assessment of $200, 100 for

12    each count.

13            Now, the government has filed a motion for an upward

14    departure.  And the government asks that the court take into

11:05AM  15    account various factors, including the abuse of trust that is

16    present here given the fact that the defendant was a officer of

17    the police department.  And the government has asked that the

18    court depart upward six levels to an offense level 18, and the

19    range would be 27 to 33 months.

11:05AM  20            So, Ms. Byrne, if you would speak to sentencing and

21    the motion for an upward departure.

22            MS. BYRNE:  Thank you, Your Honor.

23            THE COURT:  Which I'm not even sure that at this point

24    in time an upward departure is exactly what we're talking about

11:06AM  25    because the court is required to fashion a sentence under

13

```
        1    Title 18 Section 3553.  And that is the seven factors that the
        2    court has to look at in terms of what is reasonable.
        3          I do believe the Ninth Circuit requires notice to the
        4    defendant that the government believes that the sentence within
11:06AM 5    the advisory guidelines is unreasonable and that they are
        6    asking for a sentence higher, but I'm not sure -- upward and
        7    downward departure are terms of art which may -- in the context
        8    of fashioning a reasonable sentence after Booker, may not be
        9    quite accurate; but the notice was required.  The notice was
11:06AM 10   provided, and at this point I would like you to speak to a
        11   reasonable sentence given those factors.
        12         MS. BYRNE:  Thank you.  Your Honor, I think -- I filed
        13   a sentencing memorandum.
        14         THE COURT:  Yes.
11:07AM 15         MS. BYRNE:  And I think the heart of the memorandum,
        16   all the law aside and all of that, is located on -- starting
        17   on -- at the bottom of Page 6.
        18         And my point is this:  I concur with Your Honor that
        19   we now look at all of the factors.  And as I've indicated, one
11:07AM 20   of the statutes is -- 18 USC 3582(a) requires a sentencing
        21   court to recognize an imprisonment is not an appropriate means
        22   of promoting correction or rehabilitation.
        23         But what I'm saying here is that Mr. Corn meets the
        24   indicia for a potential for rehabilitation.  He has some
11:08AM 25   terrible flaws which were revealed during the commission of
```

14

1    this offense and are really well outlined in the presentence

2    report.

3            On the other hand, however, he has some significant

4    strengths that should give this court some confidence as to his

11:08AM  5    future.  And those strengths are, first of all, he has pleaded

6    guilty, has expressed remorse and it's sincere, honest remorse.

7    He comes from a really great family which means that he's more

8    well grounded and less tenuous than many of the people that

9    appear before Your Honor.  He's one of the few people that

11:08AM 10    appear in this court whose mom and dad are still married and

11    are still strong.

12            His mom and dad are both employed, and they have

13    foster children.  They are both, as the court can see from the

14    letters, members of a church.  The last 20 years the father is

11:09AM 15    a deacon, and the mom is a Sunday school teacher.  And he was

16    raised in this church.

17            And I know the court has seen the letter from Pastor

18    Jeff Yamashita.  He is a man I knew in another incarnation.  He

19    was a homicide -- HPD homicide detective.  And he felt the

11:09AM 20    calling and has been in the ministry for 20 years.  He has

21    known James Corn for 20 years as a parishioner, as a little boy

22    growing all the way through.  And all of his life he attended

23    church and Sunday school and helped, as Pastor Yamashita

24    indicated.  He helped in the Sunday school.

11:09AM 25            So -- also my client has a high school diploma and he

15

```
         1    was in the top third of his class at Leilehua.  He is -- he
         2    could be a college person, but he seems to have elected this
         3    last decade to do blue collar work.  He has his CDL, commercial
         4    driver's license, and has had three well-paying jobs in blue
11:10AM  5    collar areas, which are documented in my PSR -- in the PSR and
         6    in my report.  The point being that he can support his family
         7    upon his release.  He has that capability, and he's shown it
         8    strongly in the past.
         9         In addition, he has a toddler that has really brought
11:10AM 10    out the paternal instinct in him and a woman that he intends to
        11    marry; but they're not going to be sloppy about this.  They're
        12    going to wait until he's through with the incarceration.  They
        13    are going to wait until he gets a job and they're doing it
        14    right, but they are getting married.  I'd say his son and his
11:10AM 15    wife to be are his -- are his life.
        16         Now, another strength that he has, Your Honor, is that
        17    although he was addicted to cocaine and also prescription
        18    medications and was also drinking too much, he has been
        19    successful in a dual diagnosis treatment program.
11:11AM 20         When he was incarcerated, we had someone from the
        21    state -- the state has a program where they interview someone
        22    to see if they're eligible for mental health services.  And to
        23    our surprise, they indicated that he suffered from severe
        24    depression, not just situational, not because he was
11:11AM 25    incarcerated but ongoing.  And he, therefore, got into a dual
```

16

1    diagnosis treatment program.  He learned that the depression

2    led to the self-medication with these drugs and made him feel

3    high and great and good and nasty.  And he learned about drug

4    addiction, and he learned relapse prevention.

11:11AM  5    So, as he tells me, his plan, if he ever feels that

6    depression come back, is to seek the counseling, to step up on

7    the AA and NA steps, to tell his family that he's depressed

8    instead of trying to be the macho guy who avoids it and just

9    gets high to feel better.

11:12AM  10    So, he is -- we have several letters from the

11    treatment facility, the director of the treatment facility,

12    members who work there, from his psychologist, all of whom say

13    he's steady, on time, on point and learning and is responsible.

14    So, all of those things, I think, bode for a good

11:12AM  15    future in which the court can have less anxiety rather than

16    more as to when he's out, how he will behave.  And I think that

17    the indicia are strong that he will behave very responsibly.

18    May I also say that incarceration was really hard on

19    him being a police officer.  Much of it -- almost all of it was

11:13AM  20    spent in the shoe.  And may I say also that he has a very

21    healthy, almost overwhelming amount of embarrassment for his

22    poor behavior.

23    So, those -- that -- I mean, that is the genesis.

24    When you look at all the factors that you need to look at under

11:13AM  25    the 3553(a) -- and you've done this so many times now, you know

17

1   what they are, the history, the characteristics of the

2   defendant, the kinds of sentences available and so on.  It is

3   our position that a reasonable sentence under the guidelines --

4   well, strike that -- under 3553(a) would be something within

11:13AM 5   the guideline range, maybe even the high end because there's no

6   question, as a police officer, even though he was a police

7   officer suffering undiagnosed depression and using med --

8   illegal medication, he led a -- he had a poor example for the

9   community.

11:14AM 10       And so, for that reason, I don't think a mid or high

11   range of the guidelines is inappropriate; but I do think an

12   upward departure is.  This case is a user in possession of a

13   gun, two counts.  And I don't think we can lose focus of that.

14       So, Your Honor that's pretty much it.  We have many

11:14AM 15   letters which I won't read again to the court.

16       THE COURT:  I have read the letters.

17       MS. BYRNE:  I know you have.  And so, it's family --

18   and today a group of friends -- I'm sorry they're late, but I

19   just got them this morning -- also submitted letters talking

11:14AM 20   about --

21       THE COURT:  I have reviewed them.

22       MS. BYRNE:  -- how they can count on him.  And so,

23   that's my point.  I just think he's a good risk.  He's done

24   well in recovery and he's well raised and he's embarrassed and

11:14AM 25   I think he will do well.

18

```
         1              Thank you, Your Honor.  And, Your Honor, he does wish
         2    to speak to you or do you wish to have the government first?
         3              THE COURT:  Yes, this is your opportunity, Mr. Corn.
         4    If there's anything you would like to tell me about yourself or
11:14AM  5    about the crimes to which you have pled guilty that might
         6    affect your sentence, this is your chance to do so.
         7              THE DEFENDANT:  Yes, Your Honor.  First of all, I'd
         8    like to apologize to the State of Hawaii and the community who
         9    entrusted me and I betrayed their trust.
11:15AM 10              You know, my addictions took over my life and I made a
        11    lot of bad decisions that I am very sorry for.  I know no
        12    matter what I say can never take back the actions and things
        13    that I did wrong and things that I said, but I am sorry.  And I
        14    just -- you know, I'm trying really hard.  And I want to
11:15AM 15    apologize to my family, too, because they didn't raise me this
        16    way and I let them down and I let everybody down.  And I'm very
        17    sorry.
        18              THE COURT:  Thank you, Mr. Corn.  Mr. Brady?
        19              MR. BRADY:  Your Honor, the government has moved for
11:16AM 20    an upward departure.  We believe that there exists aggravating
        21    circumstances to a degree that is not adequately taken into
        22    account by the advisory sentencing guidelines; and that being
        23    that the defendant has, by his own admission, has abused his
        24    trust as a police officer to this community.
11:16AM 25              He provided sensitive information about other
```

1    individuals, and he also provided firearms to individuals that

2    he believed to be criminals.  And I can't think of a more

3    egregious violation of trust than that.

4        In coming up with a recommended sentence sufficient

11:16AM  5    but not greater than necessary to reflect the seriousness of

6    the offense and to promote respect for the law and provide just

7    punishment, the government considered the nature and

8    circumstances of this offense.

9        And we would submit that as to Count 2, the defendant

11:16AM  10   sold a .38 caliber pistol to a person he believed to be a

11   criminal.  It was the defendant's idea to sell the gun to the

12   undercover police officer.  This is an individual who was sworn

13   to uphold our laws and protect our community.  And he was the

14   individual that was putting guns on our streets.

11:17AM  15      In addition, the defendant was providing private and

16   highly sensitive information about other people in the

17   community.  And, again, this isn't just somebody who was doing

18   a background check for a friend for employment or something of

19   that nature.  He's providing the sensitive information about

11:17AM  20   other people to a person he believes to be a criminal.

21       It's the defendant, if you listen to the tapes, that

22   initiated all the conversations about starting a new drug line

23   with his friends in the airline industry that had access to

24   airplanes flying in from the Mainland.  It was the defendant

11:17AM  25   who admitted that not only was he using drugs for over a year,

20

1 but he was providing those drugs to other individuals for a

2 year.  And this is all the nature and circumstances of the

3 offense that led up to these charges.  I would also note that

4 neither of the firearms in Counts 2 and 3 were registered.

11:18AM 5   I can't think of a more dangerous situation than to

6 have a police officer like this individual who is violating our

7 trust.  And, therefore, we are requesting an upward departure

8 in this matter.  We're asking for 33 months, and we're asking

9 for three years supervised release.

11:18AM 10   THE COURT:  Thank you.  There have been a number of

11 terms used.  We've talked about an upward departure.  We've

12 talked about a violation of trust.  And there is, in the

13 motions filed, the question of the sentencing guidelines that

14 allows the court to take into account the relevant conduct of

11:18AM 15 the first count that was not pled to -- the first count in the

16 indictment in which it was not pled to in the plea agreement.

17 And that is the 50 grams or more of methamphetamine, and the

18 defendant did not plead guilty to that.

19   And we have already covered the fact that while he

11:19AM 20 thought it might be meth, he did not know for a fact that it

21 was meth; and I take that at face value and treat that as my

22 finding.

23   And I am not finding relevant conduct with respect to

24 the methamphetamine as something that is affecting this

11:19AM 25 sentence.  I am not going to rely on the Sentencing Commission

1    provision that would allow me to do that because I don't

2    believe that it is necessary, given the various factors that

3    are present here.

4         And it is my responsibility under the Supreme Court

11:19AM  5    case of Booker to sentence under Title 18 United States Code

6    Section 3553(a).  And there are these seven circumstances that

7    the court must take into account.

8         This is an unusual situation.  I think this is exactly

9    what Booker was talking about in terms of things that do not

11:20AM 10    fit exactly into the guidelines.  The -- there are situations

11    where the guidelines overstate what may be an appropriate

12    sentence; but this is a sentence in which the advisory

13    guidelines state what is inadequate, given the aggravating

14    factors here.

11:20AM 15         The behavior here and the violation of his

16    responsibilities as a police officer went on for a very long

17    time.  This is not a situation in which a person just suddenly

18    had a week of confusion and bad judgment and did something that

19    was inappropriate and out of keeping with his character.  This

11:21AM 20    is a situation in which he went on with illegal behavior over a

21    long period of time, taking drugs.  And to the extent that he

22    may have dealt drugs, that's not what he's charged with; but he

23    was a police officer sworn to uphold the law and he continued

24    to take drugs over a long period of time.

11:21AM 25         The other factors that I think cannot be ignored here

22

1    is the -- the guns are not the only thing that reflects a
2    failure to act the way a person who is in the position of
3    guarding our liberty and guarding our safety -- that is not the
4    only way he behaved that was outside of the law.  We have other
11:22AM  5    arrests.  We have the state arrest where he was charged --
6    arrested for terroristic threatening.  And the information
7    there involves him abusing his position as a police officer.
8    And the behavior that is reflected there is another instance of
9    him basically being in a situation where he utilized his power
11:22AM 10    as a police officer and was charged with terroristic
11    threatening in the first degree.
12            I am very disappointed also to see that he was
13    arrested for abuse of a family or household member after his
14    girlfriend, the mother of his child, back in 2004 admitted
11:23AM 15    herself to the hospital, to the emergency room, because of
16    complaints to the medical personnel of pain and soreness in her
17    shoulders and arms resulting from an argument with her
18    boyfriend, later identified as the defendant.  She did not
19    press charges, but the point is she felt it was sufficient that
11:23AM 20    she had to go to an emergency room to deal with her health
21    problems that resulted from that.
22            The record also indicates he was arrested for
23    terroristic threatening in the first degree and unauthorized
24    entry into a motor vehicle in Waianae back in 2004.  And the
11:23AM 25    question is not whether or not he was adjudicated for these

1    things and whether he was sentenced for them.  The point is his

2    behavior was out of control for a long period of time.

3         And these other acts show his lack of performance as a

4    person who is entrusted with the responsibility of keeping our

11:24AM  5    community safe, and that has to be responded to.  It has to be

6    treated.

7         I look at the nature and circumstances of the offense

8    and the history and characteristics of the defendant.  And

9    while he does come from a good family -- and I do have a great

11:24AM 10    deal of hope for the future with respect to his future -- I do

11    have to take into account the fact that his behavior was

12    totally unacceptable for a person in his position.  And it is

13    an aggravating factor of his situation, his crime.

14         And the seriousness of the offenses and promoting

11:25AM 15    respect for the law and just punishment for the offenses, the

16    idea of giving guns over to people who are involved, he

17    believed, in crimes is totally unacceptable.  And what is a

18    police officer doing with unregistered firearms?  That is

19    unacceptable and is something the court has to look at.

11:25AM 20         We have to also deter criminal conduct and not just in

21    people who are making a conscious decision to be criminal, but

22    it must be something that upholds the respect for law

23    enforcement by punishing seriously someone who is in law

24    enforcement and who violates the law in this manner.  And the

11:25AM 25    public must be protected from this type of behavior.

1          Now, I do want him to have educational and vocational

2    training while he is incarcerated.  I think that there's always

3    the possibility there's something else that can be done in that

4    regard, even though he has been employed.

11:26AM   5          In terms of unwarranted sentencing disparities,

6    luckily this kind of a situation is very unusual.  We don't

7    usually see people in this situation.

8          And I am taking all of those things into account, and

9    I am sentencing him to 28 months of incarceration.  And that is

11:26AM  10    for both Counts 1 and 2, and they are to be -- terms are to be

11    served concurrently.  The supervised release will be three

12    years as to each count, and those terms are to be served

13    concurrently.  The court is not going to impose a fine because

14    I don't believe you can pay it, nor restitution.  It's not

11:26AM  15    applicable, and there's $200 for a special assessment.

16          Now, there are conditions:  One, you shall abide by

17    the standard conditions of supervision.  Two, you shall not

18    commit any crimes, federal, state or local.  Three, you shall

19    not possess any illegal controlled substances.  Four, you shall

11:27AM  20    cooperate in the collection of DNA as directed by the probation

21    officer.  No. 5, you shall refrain from any unlawful use of a

22    controlled substance; and you shall submit to one drug test

23    within 15 days of commencement of supervision and at least two

24    drug tests thereafter but no more than eight valid drug tests

11:27AM  25    per month during the term of supervision.  No. 6, you shall not

25

```
          1    possess a firearm, ammunition destructive device or any other
          2    dangerous weapon.  No. 7, you shall participate in and comply
          3    with substance abuse treatment which includes drug and alcohol
          4    testing in programs -- in a program approved by the Probation
11:27AM   5    Office and you are to refrain from the possession and/or use of
          6    alcohol while participating in substance abuse treatment.
          7            I also am going to require that you participate in a
          8    mental health program at the discretion and direction of the
          9    Probation Office.  And further, you are to execute all
11:28AM  10    financial disclosure forms and provide the Probation Office and
         11    the Financial Litigation Unit of the U.S. Attorney's Office
         12    access to any requested financial information, to include
         13    submitting to periodic debtor's examinations as directed by the
         14    Probation Office.  And No. 10, you shall submit your person,
11:28AM  15    residence, place of employment or vehicle to a search conducted
         16    by the U.S. Probation Office at a reasonable time and in a
         17    reasonable manner based upon reasonable suspicion of
         18    contraband, evidence of a violation of a condition of
         19    supervision.  And failure to submit to a search may be grounds
11:28AM  20    for revocation of supervision.  You shall warn any other
         21    resident that the premises may be subject to search pursuant to
         22    this condition.
         23            Now, either counsel have any legal objection to the
         24    sentence as stated?
11:28AM  25            MR. BRADY:  No, Your Honor.
```

1           MS. BYRNE:  Your Honor, no legal objection.

2           THE COURT:  The sentence as stated is imposed.

3           Now, I'm going to ask that you get the 500-hour drug

4    treatment program, educational and vocational and alcohol

11:28AM  5    treatment.  I'm also going to ask that you be sent to the

6    Mainland to serve your sentence.  I don't think it would be

7    healthy for you to remain here, and I will even ask for the

8    East Coast if that is something you think may make life a

9    little bit easier.

11:29AM 10           MS. BYRNE:  Your Honor, he would rather have Sheridan

11   because his family could fly to visit with him.  It's just so

12   expensive to the East Coast.

13           THE COURT:  Okay.  At this time I want to apprise you

14   of your right to appeal.  You may appeal your conviction if you

11:29AM 15   believe that your guilty plea was somehow unlawful or

16   involuntary, if there's some other fundamental defect in the

17   proceeding that was not waived by your guilty plea.  You have

18   entered into a guilty agreement which waives some of your

19   rights to appeal the sentence itself.  And such waivers are

11:29AM 20   generally enforceable; but if you believe the waiver is

21   unenforceable, you can present that theory to the appellate

22   court with few exceptions.

23           Any notice of appeal must be filed within ten days of

24   judgment being entered in your case.  And if you're unable to

11:29AM 25   pay the cost of an appeal, you may apply for leave to appeal in

27

1    forma pauperis; and if you so request, the clerk of the court

2    will prepare and file a notice of appeal in your behalf.

3         I do recognize the strides that you have made,

4    Mr. Corn.  I do believe you are sincere at this point in your

11:30AM  5    intention to lead a law-abiding and productive life; but I

6    cannot ignore the great disservice you did to the police, to

7    the society.  And that is something that must be punished.

8         Is there any objection to him remaining on bail,

9    Mr. Brady?

11:30AM 10         MR. BRADY:  Yes, Your Honor.  I -- counsel did inform

11    me that she was going to request a self surrender, and I

12    informed counsel that we would be opposing that.

13         We all know that the holidays are particularly -- a

14    particularly stressful period; and we believe that Mr. Corn,

11:30AM 15    who is an admitted addict of illegal substances, a

16    polysubstance abuser, with a history of possessing unregistered

17    firearms, it would not be in the interests of the community to

18    have him out during this period of time.

19         MS. BYRNE:  Your Honor?

11:31AM 20         THE COURT:  Yes, Ms. Byrne.

21         MS. BYRNE:  Thank you.  He is still living at

22    Poailani, and he is in their aftercare program.  The program --

23    his participation ends on December 11.

24         And, yes, we would like to request that he stay there

11:31AM 25    at minimum and let him finish his aftercare which deals with

28

```
        1   relapse prevention; but, yes, we would prefer that he be
        2   allowed to self report even the day after Christmas.  It does
        3   take six weeks --
        4           THE COURT:  Okay.  Now, Ms. Byrne --
11:31AM 5           MS. BYRNE:  Yes.
        6           THE COURT:  -- there is no way that that would be six
        7   weeks.  There is no way he would get Christmas, in any event.
        8   So, that is just --
        9           MS. BYRNE:  You're right.  You're right.
11:31AM 10          THE COURT:  So, there is no -- ever a point at which
       11   he was going to be home for Christmas.
       12           MS. BYRNE:  But if we --
       13           THE COURT:  What we're really talking about now,
       14   Ms. Byrne, is a realistic self-surrender date given the
11:32AM 15  government's point.
       16           And I think the government's point is a good one.
       17   Mr. Corn has been given an opportunity to have treatment.  He
       18   has succeeded in that treatment.  And I can see a few days, I
       19   can see a week; but past that, I do not see that as being an
11:32AM 20  appropriate response to his situation.
       21           MS. BYRNE:  Very well, Your Honor.  We would request a
       22   one-week self-surrender date.
       23           THE COURT:  Okay.  Okay.  What date would that be?
       24           COURTROOM MANAGER:  November 15.
11:32AM 25          THE COURT:  November 15th, 2:00 o'clock at the Federal
```

29

         1    Detention Center.

         2              That gives you one week, Mr. Corn, to get your affairs

         3    in order.  And let me point out that if you fail to report at

         4    2:00 o'clock on the 15th of November, that is a separate

11:33AM  5    criminal offense under Title 18 Section 3146(a)(2) of the

         6    United States Code for which you can given a separate

         7    additional sentence.  So, it is very important.

         8              Now, Mr. Corn, I am giving you this one week rather

         9    than having you go away with the marshals right now.  And I am

11:33AM 10    doing that because I am recognizing the strides that you have

        11    made, your family support and your commitment to being a person

        12    who will now be an asset to the community.  So, I hope that you

        13    will not abuse that trust.

        14              THE DEFENDANT:  Thank you, Your Honor.

11:34AM 15              THE COURT:  Thank you.  We stand in recess.  I do want

        16    to note Count 1 dismissed, correct?

        17              MR. BRADY:  Yes, Your Honor.  Thank you.

        18              THE COURT:  Thank you.

        19              MS. BYRNE:  No objection.

        20         (Proceedings concluded at 11:34 a.m.)

        21

        22

        23

        24

        25

30

```
1              COURT REPORTER'S CERTIFICATE
2         I, Sharon Ross, Official Court Reporter, United
3   States District Court, District of Hawaii, do hereby certify
4   that the foregoing is a correct transcript from the record of
5   proceedings in the above-entitled matter.
6         DATED at Honolulu, Hawaii, November 19th, 2007.
7
8                         /s/Sharon Ross
9                         SHARON ROSS
10                        CSR 432, RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```